UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CORY EDWARD FISHERMAN,                          CIV. NO. 12-2554 (JRT/JSM)

       Plaintiff,                          REPORT AND RECOMMENDATION

v.

LT. ERIK RASMUSSEN,
OFFICER JUSTIN WATRIN and
JUSHUA BURDINE,

       Defendants.

This matter is before the Court on Defendants' Motion to Dismiss or for Summary

Judgment [Docket No. 16]. This matter was referred to the undersigned by the District

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket

No. 1]. In addition, this matter is before the Court on plaintiff's Motion for Video or

Photos [Docket No. 10].[1]

## II.   PROCEDURAL HISTORY

### A.   <u>The Complaint</u>

Plaintiff Cory Edward Fisherman was a state prisoner committed to the

Minnesota Correctional Facility-Rush City ("MCF-RC") at the time of the incident at

issue in his Complaint. Affidavit of Heather Sletten ("Sletten Aff."), ¶2, Ex. 1 (MCF

---

[1]     Plaintiff's Motion for Video or Photos [Docket No. 10] is not a dispositive motion requiring the issuance of a Report and Recommendation to the District Court. Nonetheless, for the sake of efficiency, the Court will consider both motions in this Report and Recommendation.

Status History Report) [Docket Nos. 19, 19-1].[2]  Fisherman has since been released and is not subject to any MNDOC supervision.  Sletten Aff., ¶2.

The facts as alleged in Fisherman's Complaint are as follows:  Fisherman, who is Native American, was removed from his cell for an unclothed body search.  Complaint, p. 7.[3]  Fisherman's clothes were "forcibly removed" while he was handcuffed and he was walked naked backwards past two-and-a-half cells in front of other inmates.  Id. Fisherman alleged that the corrections officers—defendants Joshua Burdine[4] and Justin Watrin—would have taken him farther, except that other inmates started to "holler" "cover him up" and another guard brought a body cover.  Id.  Fisherman alleged that "no other race [has] been treated as such and the security squad is all white.  A white inmate. . .was taken out of his cell on the 23rd of July. . .was fully clothed."  Id. Defendant Lt. Erik Rasmussen supervised the incident.  Id., p. 8.

Fisherman sued Rasmussen, Burdine and Watrin, although he did not state whether he was suing them in their official or individual capacities, pursuant to 42 U.S.C. §1983.  Fisherman sought $860.00 in compensatory damages "and for [relief] I want to make sure this [does] not happen to another Native American."  Id., p. 5. Fisherman sought an additional $1.5 million dollars for damages Fisherman alleged he

---

[2]    Plaintiff was confined to the MCF as "Corey Edward Fisherman."  Sletten Aff., ¶2. Plaintiff has sued under the name of "Cory Edward Fisherman."  Complaint, p. 1 [Docket No. 1].  Sletten is an Office and Administrative Specialist employed by the Minnesota Department of Corrections ("MNDOC") at MCF-RC and is also the litigation coordinator and grievance coordinator.  Sletten Aff., ¶1.

[3]    The Complaint is not presented in numbered paragraphs.  The Court is referencing the page numbers assigned through the CM-ECF filing system.

[4]    Fisherman misspelled Burdine's first name in the Complaint as "Jushua." Defendants' Memorandum of Law in Support of Motion to Dismiss or for Summary Judgment, p. 1 ("Def. Mem.") [Docket No. 17].

would have to "[deal] with for the rest of [his] life.  Id.  Fisherman did not describe the nature of these damages (e.g. if the damages were emotional, psychological, physical) or if the damages were punitive rather than compensatory.

### B.    Fisherman's Motion for Video or Photos

On February 21, 2013, Fisherman filed a one-sentence document, which read "I would like to request for motion for [video] or photos of the incident?"  [Docket No. 10].  This document was docketed as a motion, although no Notice of Motion or Memorandum accompanied the document, as required by L.R. 7.1.  Defendants did not respond to this "motion."

### C.    Defendants' Motion to Dismiss or for Summary Judgment

In lieu of answering the Complaint, defendants moved for dismissal or for summary judgment.   Defendants described the incident out of which Fisherman's complaint arose as follows.  On July 29, 2012 at 9:12 a.m. MCF-RC staff nurse Denise Garin was administering medication to Fisherman.  Sletten Aff., Ex. 2, p. 3[5] (MNDOC Incident Report).  Garin had suspected Fisherman of "cheeking" his medication but had not been able to see a pill during a mouth check.  Id.  After giving other prisoners their medication, Garin looked back into Fisherman's cell and saw him take a piece of tissue and bring the tissue to his mouth.  Id.  Fisherman then folded the tissue.  Id.  Garin knocked on Fisherman's door and asked him to bring her the tissue.  Id.  Fisherman removed the pill Garin had given him from the tissue and swallowed it.  Id.  Garin notified defendant Lt. Rasmussen of the incident.  Id.

---

[5]     The exhibits attached to Sletten's affidavit are not numbered.  The Court is referencing the page numbers assigned through the CM-ECF system.

About forty-five minutes later, Rasmussen told corrections officer Sgt. Trevor Sass that Fisherman needed to be placed on "quiet status" as a result of the incident. Id., p. 4 (Sgt. Trevor Sass Incident Report). Several corrections officers, including defendant Justin Watrin, went to Fisherman's cell and told him that he had to be removed to prepare his cell for quiet status. Id. Fisherman became agitated, swore at the corrections officers, refused directives and threatened to "knock [them] out." Id. Fisherman was removed from his cell and placed in restraints. Id. While preparing Fisherman's cell for quiet status, Sass found a pill under his mattress. Id. The pill was identified as Neurotin[6] and was removed and placed into evidence. Id. Fisherman consented to an unclothed body search. Id. As Fisherman was undressing, he kicked his shoes at Sass and then swore at him. Id. Fisherman became increasingly aggressive and Sass asked Burdine and another officer for help. Id. Fisherman then began to resist staff very aggressively. Id. Fisherman was restrained and the search was completed. Burdine and Watrin then began to escort Fisherman out when Fisherman looked towards Watrin and began to knee and kick at him. Id. Fisherman was escorted back to a bunk and secured with leg irons. Id. Fisherman yelled "you punched me in my head, I am gonna beat all your ass! I will see you all when I get out in 120 days, that's Native Mob!"[7] Id. Staff placed a cover over Fisherman's head because he was spitting. Id. Fisherman was escorted to the door where a towel was

---

[6]     Neurotin is the brand name for Gabapentin, which is used to control seizures and relieve nerve pain. http://www.pfizer.com/products/rx/rx_product_neurontin.jsp.

[7]     "The Native Mob has been the largest Native American gang in Minnesota since the mid-1990s, committing a variety of crimes including drug trafficking, drive-by shootings, assaults and robberies. United States v. McArthur, Civ. No. 12-26 (JRT/JSM), 2012 WL 2012 WL 6193892 at *3 (D. Minn. Aug. 6, 2012) (citation omitted).

placed on the lower portion of his body.  Id.  Fisherman continued to verbally abuse the staff and made statements referring to threats when he got out of prison and that he was a member of the Native Mob.  Id., pp. 4-5.  Fisherman was placed in a restraint board, but staff notified corrections officers that Fisherman had freed his head from the restraint.  Id., p. 5.  Rasmussen and others proceeded to Fisherman's cell and saw that Fisherman had his head free and was trying to loosen the leg strap.  Id.

At noon, Fisherman was removed from the restraint board and returned to his cell.  Id.  Watrin, Burdine and Rasmussen submitted incident reports consistent with Sass's report.  Id., pp. 6-14.  Rasmussen reported that when he initially spoke with Fisherman about being placed in quiet status, Fisherman said "This is because you are racist and I am native" and "no one else gets placed on Quiet Status for that" although Rasmussen explained to Fisherman that all inmates who were on segregated status who were found "cheeking" medication were placed on quiet status.  Id., p. 12.  Burdine reported that while assisting the other corrections officers during the search, Fisherman told Burdine that when he was released he was going to "take off" on Burdine and kill him.  Id., p. 14.

Fisherman was charged within the MNDOC's disciplinary system of disobeying a direct order, smuggling, threatening others, disorderly conduct, possessing contraband and assaulting staff.  Sletten Aff., ¶8.  Fisherman waived a discipline hearing and was found guilty of disobeying a direct order, threatening others, disorderly conduct, and possessing contraband.  Id.  The charges for smuggling and assaulting staff were dismissed.  Id.  Fisherman received seventy-nine days in segregation.  Id.  There is no evidence that Fisherman ever appealed this discipline.  Id.

On October 4, 2012, Fisherman attempted to file a grievance about the incident by sending Sletten a grievance form attaching a letter dated August 5, 2012, Fisherman had addressed to "Native Legal Aid." Sletten Aff., ¶6, Ex. 3. This letter is the same document Fisherman attached to his Complaint as his Statement of Claim. Complaint, pp. 4, 7. Sletten rejected the grievance as untimely and because Fisherman had not submitted any evidence that he had attempted to informally resolve the dispute, as required by the MNDOC's grievance process. Sletten Aff. Ex. 3 (memo from Sletten to Fisherman dated October 8, 2012, describing the reasons for rejecting Fisherman's grievance).

Defendants moved to dismiss the Complaint or for summary judgment on the following grounds: Fisherman's claim for injunctive relief (to the extent that his assertion that he "want[s] to make sure this [does] not happen to another Native American" can be construed as a request for injunctive relief) is moot because Fisherman is no longer incarcerated. Def. Mem., p. 5 (citing Roubideaux v. North Dak. Dep't of Corr. & Rehab., 570 F.3d 966, 976 (8th Cir. 2009); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999). Def. Mem., p. 5. In addition, Fisherman's claims against the defendants are barred by sovereign immunity, by §1983, and by the terms of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(e), which provides that a prisoner may not bring a federal civil claim for "mental or emotional injury suffered while in custody without a prior showing of physical injury." Def. Mem., p. 7. Therefore, Fisherman's claims for compensatory damages for any mental or emotional injury he may have suffered are barred by the PLRA. Id., p. 8.

Defendants also argued that Fisherman's Complaint failed to state a claim. To begin with, Fisherman's brought his Complaint under §1983, but he did not identify any specific federal constitutional right that the defendants violated. Id., pp. 8-9. To the extent that Fisherman's complaint could be construed to allege an Equal Protection claim, a claim under the Eight Amendment's prohibition against cruel and unusual punishment, or a Fourteenth Amendment Due Process claim, the Complaint does not allege facts to support those claims and they must be dismissed. Id., pp. 8-12.

Last, defendants argued that Fisherman's Complaint had to be dismissed for failure to exhaust his administrative remedies before filing his Complaint. Id., pp. 14-15.

### D.    Fisherman's Failure to Respond to Defendants' Motion

On April 8, 2013, this Court issued an Order requiring Fisherman to file and serve a response to defendants' motion on or before May 20, 2013. Order, p. 1 [Docket No. 25]. Fisherman failed to submit any response to the motion and has not communicated with the Court regarding the motion or any other issues related to his lawsuit. For the reasons set forth below, this Court does not recommend granting summary judgment on the basis of default, but has considered defendants' motion on the merits.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Defendants have moved for dismissal under Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). In addition, "the court must resolve any ambiguities concerning the sufficiency of the

plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 662 (internal quotation marks and citations omitted).

B.     **Motion for Summary Judgment**

Defendants have moved in the alternative for summary judgment pursuant to Rule 56. Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248). "[I]f the court can conclude that a reasonable trier of fact could return a verdict

for the nonmovant, then summary judgment should not be granted." DePugh, 880 F.Supp. at 656 (quoting Anderson, 477 U.S. at 248).

The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted).

When considering a motion for summary judgment, the Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the non-moving party. Enterprise Bank v. Manga Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).

This Court has considered the declarations and exhibits defendants submitted in connection with defendants' motion and will, therefore, treat the motion as one for summary judgment.[8] See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the

---

[8] Defendants stated that they relied on matters outside the pleadings only in connection with their arguments regarding mootness and failure to exhaust administrative remedies. Def. Mem., p. 1, fn. 1. The Court concluded that rather than considering the declarations and exhibits for some issues and not others, it was more practical to convert defendants' motion to one for summary judgment and consider the extraneous materials in connection with all of the issues raised.

motion must be treated as one for summary judgment under Rule 56."); <u>see</u> <u>also</u> <u>McAuley v. Federal Ins. Co.</u>, 500 F.3d 784, 787 (8th Cir. 2007) ("We have previously held that 'Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'")

Although Fisherman failed to respond to defendants' motion, the Court will not recommend summary judgment by default. <u>See</u> <u>Canada v. Union Elec. Co.</u>, 135 F.3d 1211, 1213 (8th Cir. 1997) ("In the present case, plaintiff did not file any opposition to defendant's motion for summary judgment, but we believe, nevertheless, that the District Court was correct in not treating this non-response as itself sufficient to dispose of the motion. When a motion would be dispositive of the merits of the case if granted, courts should normally not treat a failure to respond to the motion as conclusive. They should. . .examine those portions of the record properly before them and decide for themselves whether the motion is well taken.")

Federal Rule of Civil Procedure 56(e) itself provides that if "the adverse party does not respond, summary judgment, <u>if</u> <u>appropriate</u>, shall be entered against the adverse party." (emphasis added). Therefore, even if the motion is unopposed, the Court must determine whether summary judgment is "appropriate." <u>Stroeder v. Smith</u>, Civ. No. 10-4115 (PAM/JJK), 2013 WL 354112 at *3 (D. Minn. Jan. 3, 2013). Nonetheless, the Court is not "required to scour the record to determine whether there are issues of fact that preclude summary judgment." <u>Id.</u> (citing <u>Satcher v. University of</u> <u>Ark. at Pine Bluff Bd. Of Trustees</u>, 558 F.3d 731, 735 (8th Cir. 2009) (where summary judgment is unopposed, "[i]t was not the District Court's responsibility to sift through the

record to see if, perhaps, there was an issue of fact."). Fisherman is entitled to the benefit of the less stringent standard of pleading afforded a pro se party. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, Fisherman is required to meet the standards of Fed. R. Civ. P. 56. Quam v. Minnehaha County Jail, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam) ("Although [plaintiff] is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to [his] lawsuit.").

With these standards of review in mind, the Court turns to defendants' motion.

## III.    DISCUSSION

### A.    Fisherman is not Entitled to Injunctive Relief

To the extent that the Complaint can be construed to seek injunctive relief, that relief is not available to Fisherman because he is no longer in custody and there are no facts in the record to suggest that the alleged conduct will be repeated. "'In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated.'" Roubideaux, 570 F.3d at 976 (quoting Missouri Prot. & Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803, 811 (8th Cir. 2007). "'A claim is properly dismissed as moot if it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'" Id. (quoting Keevan v. Smith, 100 F.3d 644, 647(8th Cir. 1996)); see also Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (a federal court has no authority to render opinions on moot questions). If the issues raised in a request for injunctive relief are no longer "live" or the parties no longer have a cognizable interest in the outcome of the litigation—for example, prisoners who

are no longer in custody and there is no suggestion that they will be returned to custody—then the claims must be treated as moot.  Id. at 976; see also Smith, 190 F.3d at 855.

There is no evidence in the record to indicate that there is any expectation that Fisherman will be both incarcerated again, or subject to the same discipline.  Fisherman is no longer in custody and is not subject to any form of MNDOC supervision.  Sletten Aff., ¶2.  On these grounds, the Court concludes that to the extent Fisherman is asking for injunctive relief, that issue is moot and cannot be considered by the Court.

### B.  Eleventh Amendment Bars Claim for Damages Against Defendants in Their Official Capacities

Fisherman does not state whether he is suing the defendants in their official capacities or individual capacities, therefore the Court must assume that the suit is brought against the defendants in their official capacities.  See Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995) (if a complaint is silent about the capacity in which defendants are sued, the court must interpret the complaint as including only official capacity claims); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989) (a plaintiff wishing to sue a government employee in his or her personal capacity must so specify).

To the extent that Fisherman has sued the defendants in their official capacities, the United States is the real party in interest and his claims are barred by the Eleventh Amendment.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Generally, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  This bar also applies when officials are being sued in their official capacity, because "a judgment against a public

servant 'in his official capacity' imposes liability on the entity that he represents." Brandon v. Holt, 469 U.S. 464, 471 (1985). Eleventh Amendment immunity also extends to state officials, since "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). See also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (Eleventh Amendment immunity extends to state officials when the "state is the real, substantial party in interest.") (internal quotation omitted); Treleven v. University of Minn., 73 F.3d 816, 818 (8th Cir. 1996) (official capacity lawsuits are "essentially 'for the recovery of money from the state.'") (quoting Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 464 (1945)).

Minnesota has not waived its immunity from §1983 claims. Phillips v. Minnesota State Univ., Civ. No. 09-1659 (DSD/FLN), 2009 WL 5103233 *2 (D. Minn. 2009). It is also undisputed that the State of Minnesota has not consented to suit. See DeGidio v. Perpich, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (recognizing that the State of Minnesota's limited waiver of sovereign immunity from tort actions in state court is not a waiver of Eleventh Amendment immunity from suit in federal court for federal constitutional claims). In addition, it is well-established that Congress did not abrogate the states' immunity by enacting 42 U.S.C. §1983. See Quern v. Jordan, 440 U.S. 332, 344 (1979). For all of these reasons, defendants are entitled to summary judgment on Fisherman's claims against the defendants acting in their official capacities.

## C.    Failure to Exhaust Administrative Remedies

42 U.S.C. §1997e(a), which was enacted in 1996 as part of the PLRA provides:

> No action shall be brought with respect to prison conditions[9]
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

This statute requires that prisoners must exhaust all of their available administrative remedies before they can bring a civil rights action based on the conditions of their imprisonment.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes…."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  This is true regardless of the nature of the claim or the relief the prisoner is seeking.  Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (emphasis added).  In other words, "proper exhaustion" of administrative remedies, "means using

---

[9]    The Eighth Circuit has stated that the term "prison conditions" used within 42 U.S.C. § 1997e(a) is defined in 18 U.S.C. § 3626(g)(2), as follows:

> [T]he term "civil action with respect to prison conditions" means any civil
> proceeding arising under Federal law with respect to the conditions of
> confinement or the effects of actions by government officials on the lives
> of persons confined in prison, but does not include habeas corpus
> proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2) (emphasis added).  See Castano v. Nebraska Dept. of Corrs., 201 F.3d 1023, 1024 n. 2 (8th Cir. 2000).

all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90 (quotation and marks omitted). Woodford stands for the proposition that the exhaustion requirement may not be satisfied by filing an untimely grievance or otherwise procedurally defective appeal. See Woodford, 548 U.S. at 92-93.

As to the purpose of this requirement, the Eighth Circuit has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Johnson v. Jones, 340 F.3d 624, 626-27 (8th Cir. 2003); see also Woodford, 548 U.S. at 89 ("Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects 'administrative agency authority.' Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' Second, exhaustion promotes efficiency.") (quotation and citations omitted); Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)) ("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'").

Under the PLRA, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on defendant. Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199 (2007)); see also Nixon v. Sanders, 243 Fed. Appx. 197, 199 (8th Cir. 2007).

If it is established that administrative remedies were not exhausted before the prisoner files suit, dismissal as to those claims subject to exhaustion is mandatory. Jones, 549 U.S. at 211 ("[t]here is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); Woodford, 548 U.S. at 85 ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Johnson, 340 F.3d at 627-28 (finding that if a prisoner does not exhaust his administrative remedies before filing a complaint in federal court, "dismissal is mandatory," and even if a prisoner subsequently satisfies the exhaustion requirement while his action is still pending, the case still must be dismissed).

Inmates are excused from complying with an institution's grievance proceedings in two circumstances: "when prison officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures." Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) (internal citations omitted).

The grievance procedure adopted by the MNDOC describes the administrative remedies available to Minnesota state prison inmates. See Affidavit of Kim Ebeling ("Ebeling Aff.") [Docket No. 18], Ex. 1 (Grievance Procedure, MNDOC Policy No.

303.100, effective date August 3, 2010).[10]  Pursuant to the policy, inmates must first seek to resolve their grievances informally, by sending a kite to a pertinent prison staff member.  Id.  If the kite does not resolve the grievance to the inmate's satisfaction, then the inmate may prepare and submit a formal "Offender Grievance form" to the "facility grievance coordinator," and attach all kites used.  Id., p. 2.  The grievance form must be filed within 30 calendar days of the occurrence of the issue being grieved.  Id.  The offender is to identify a single complaint and the resolution he/she seeks on the grievance form.  Id.  The formal grievance is investigated by the facility grievance coordinator, who submits the results of his or her investigation to the prison warden/superintendent or designee.  Id.  The warden/superintendent (or designee) then rules on the grievance, and the facility grievance coordinator provides written notification to the offender of the warden/superintendent's (or designee's) decision within 20 working days from the date the grievance was logged into the grievance database.  Id.  The warden/superintendent (or designee) may obtain a one-time 20-working day extension provided the offender is notified of the extension within the first 20 working days.  Id.  If the offender does not receive a decision within 20 working days of the date the grievance was logged, or within 40 days if the offender received notice of an extension, the offender may consider the grievance dismissed and the offender may appeal the grievance immediately.  Id., p. 3.

If the inmate is dissatisfied with the response of the warden/superintendent (or designee), he can appeal that decision by submitting a formal Grievance Appeal form to

---

[10]     Kim Ebeling, an Office and Administrative Specialist Senior with the DOC. Ebeling stated that the copy of the grievance policy attached to her affidavit was in effect in July, 2012 when the incident giving rise to Fisherman's Complaint arose.

the DOC's "central office grievance appeal coordinator" within 15 working days of the date the warden/superintendent (or designee) signed the response.  Id.  That person will "[d]etermine the appropriate method of investigating the grievance and submit the investigation results with recommendation to the appropriate assistant or deputy commissioner."  Id.  The assistant or deputy commissioner then makes a final decision on the grievance.  Id., p. 4.  The assistant or deputy commissioner will respond to the appeal within 20 working days from the date the appeal was logged, and may obtain a one-time 20-working day extension, provided the offender is notified of the extension within the first 20 working days.  Id.  If the offender does not receive a decision within 20 working days of the date the grievance was logged, or within 40 days if the offender received a notice of extension, the offender may consider the grievance appeal dismissed and the offender may report the matter to the Commissioner for a resolution.  Id.  Once a grievance has been resolved by the assistant or deputy commissioner or the Commissioner, there are no further appeals.  Id.  The policy explicitly instructs the offender to "follow the chain of command and contact only one staff at a time."  Id., p. 1.

The grievance policy also permits offenders who have been threatened or are in danger to submit their complaint directly to the Central Office Grievance Appeal Coordinator for response by the assistant or deputy commissioner.  Id., p. 3.  Under these circumstances, all decisions processed by the Central Office are final and there is no second level of appeal.  Id.

In summary, the administrative remedies provided by MNDOC are fully exhausted for purposes of § 1997e(a) only when an inmate completes all of the

prescribed steps of the MNDOC Grievance Procedure, and receives a final decision from the assistant or deputy commissioner or Commissioner.

MNDOC's grievance policy applies to most conditions of confinement and applies to Fisherman's complaint that he was subject to an unclothed body search and escort out of his cell and that he was discriminated against because he is Native American. Ebling Aff., ¶4. It is undisputed that Fisherman filed an untimely grievance form that did not comply with the MNDOC's grievance procedures in that the grievance form was submitted well beyond the 30-day deadline and because of his failure to try to informally resolve the issues.

This Court concludes that Fisherman's claims against the defendants are all barred because Fisherman failed to properly exhaust the administrative remedies required by MNDOC for these claims. In addition, this Court recommends that the claims be dismissed with prejudice because the administrative remedies once available to Fisherman are no longer available. First, Fisherman is no longer incarcerated the grievance policy applies only to incarcerated prisoners. Ebling Aff., Ex. 1, p. 1 ("Offender Grievance [is] a method by which incarcerated offenders may submit a formal concern. . . ."). Even if Fisherman could submit a grievance now, all of the various deadlines for doing so have expired and, in fact, expired before Fisherman attempted to file his grievance. Sletten Aff., ¶7, 8. Because Fisherman can no longer exhaust his claims, he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice. See Woodford v. Ngo, 548 U.S. 81, 92-93 (2006); Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (noting the "policies favoring exhaustion," the court held that the PLRA contains a procedural

default component where an inmate fails to avail himself in a timely fashion of the institution's administrative process); Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004) ("failure to pursue administrative remedies while they were available precluded [the plaintiff's] federal lawsuits, and they were properly dismissed with prejudice."). For all of these reasons Fisherman's claims should be dismissed with prejudice.

### D.     Plaintiff's Motion for Video or Photos [Docket No. 10]

Having recommended the complete dismissal with prejudice of Fisherman's Complaint, the Court considered Fisherman's motion to obtain a copy of the video of the incident at issue and any photos to be moot. Even if the motion was not moot, these are materials that would be sought in the ordinary course of discovery, not through a motion before any discovery requests are posed to defendants. Therefore, the motion is also denied as premature.

## IV.    RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that:

1.     Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 16] be GRANTED and Plaintiff's lawsuit be dismissed with prejudice.

2.     Plaintiff's Motion for Video or Photos [Docket No. 10] be DENIED.


Dated:June 11, 2013          *Janie S. Mayeron*
                            JANIE S. MAYERON
                            United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 25, 2013** a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.